IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOMINIC BAILEY,

        Petitioner,

    v.

JOHN MYRICK,

        Respondent.

Case No. 2:15-cv-01423-HZ

OPINION AND ORDER

Susan F. Wilk
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

       Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

       Attorneys for Respondent

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Marion County Rape convictions. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#14) is denied.

**BACKGROUND**

Some of the pertinent background facts of this case are set out by the post-conviction court's General Judgment:

> Until 8 years of age, LF lived with her mother and siblings. Her mother, at that point, was already neglecting the children, doing drugs, not making them go to school, and [had] become involved with Petitioner. LF was removed at age 8, and returned to her mother at 9 years of age. Her mother married Petitioner. They moved to an apartment complex off Salem Heights, and Petitioner's family also lived in the same complex, so he was in and out of both apartments.

> LF didn't like Petitioner. On an afternoon where she had earlier been at a friend's home, she came home, and the only other person in the apartment was Petitioner. She went to her room and was on her bed when Petitioner came in, pushed her on the bed, restrained her, and removed her underwear. She cried and screamed, and he said to be quiet or he'd hurt her. He had vaginal intercourse with her, and told her not to tell or he'd kill her and her mother. He then left. She was 11 years old. She believed the threat and didn't tell anyone.

> Weeks after this happened, she was placed into foster care and never went back to live with her mother. Her mother eventually relinquished her parental rights. When [LF] was in a good foster home and in counseling, she disclosed the event. At that point, Petitioner was in jail.

Respondent's Exhibit 129, p. 1.

As a result of the foregoing, the Marion County Grand Jury indicted Petitioner on two counts of Rape in the First Degree. During the ensuing trial, Petitioner's trial attorney cross-examined the detective assigned to the case, Sean Kelly. Counsel's cross-examination of Detective Kelly included the following exchange:

> Q:  Now, October 12 of 2011, so last fall, you interviewed [Petitioner], right?
>
> A.  Yes, I did.
>
> Q.  Did he confess that he did this?
>
> A.  No.
>
> Q.  Strongly disagreed with that, right?
>
> A.  Yes, he did.
>
> Q.  No further questions.

Respondent's Exhibit 102, p. 130.

At this point, the prosecutor advised the judge that she had a matter for the court. Once the judge excused the jury, and after defense counsel interjected that she had no witnesses to present, the State announced its intention to offer Petitioner's prior felony convictions for impeachment purposes pursuant to *State v. Dishman,*[1] 148 Or. App. 404, 939 P.2d 1172 (1997), a case with which defense counsel was unaware:

---

[1] Pursuant to OEC 806, "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked, may be supported by any evidence which would be admissible for those purposes if the declarant had testified as a witness." *Dishman* applied this rule to out-of-court statements of criminal defendants even where those defendants elected not to testify at their trials. 148 Or. App. at 406-07.

3 – OPINION AND ORDER

> State:     Your   Honor,   it's   the   State's
> intention to now offer the defendant's prior
> impeachable felony convictions and proffer to
> the Court *State v. Dishman* which basically
> indicates   that   if   the   defense   elicits
> statements   by   the   defendant,   that   those
> statements   are   subject   to   the   same   type   of
> cross-examination   and   impeachment   that   they
> would be subject to had the defendant chosen
> to testify. And I'd like to give the Court an
> opportunity to read *State v. Dishman*.
>
> Court:     Do  you  have  a  copy  for  [defense
> counsel]?
>
> State:     No. I'm sorry, my trial notebook
> just has the case.
>
> Court:     Just has this. Okay.
>
> State:     I'm sure you're familiar with *State
> v. Dishman*.
>
> Defense:  No.

*Id* at 131-32.

    The trial judge took a recess to review the applicable law and, when he returned, allowed the parties to orally argue the issue. Following argument, the judge expressed his concern "that the defendant has a state and constitutional right not to testify, and that that one statement . . . is such a sliver when you're balancing the two, his constitutional right with the State's right, to impeach a witness with prior convictions it seems like it's so prejudicial." *Id* at 136. The trial judge noted that Petitioner had already entered a plea of not guilty, and that the court had made the jury aware of the plea such that the hearsay testimony at issue did not divulge information of which the jury was otherwise unaware. Because the issue arose on a Friday afternoon, the judge permitted the parties to develop

briefing on this "important issue" issue over the weekend. *Id* at 139. Before court adjourned, defense counsel reiterated that she did not intend to present any witnesses. *Id*.

When the trial resumed on Monday morning, defense counsel withdrew her objection to the admission of Petitioner's prior convictions for purposes of impeaching the hearsay testimony. Specifically, counsel advised the Court, "We withdraw the motion and believe that the prior conviction judgments can come in and [Petitioner] is planning to testify so that would render the whole issue moot anyway." *Id* at 147. Accordingly, the judge allowed the State to admit Petitioner's prior convictions for purposes of impeachment pursuant to OEC 609, and the State introduced Petitioner's prior judgments for Failure to Register as a Sex Offender, Theft in the Second Degree, Unauthorized Use of a Vehicle, Felony Eluding, Felon in Possession of a firearm, Assault in the Third Degree, and Burglary in the Second Degree. Respondent's Exhibit 103, pp. 7-8.

When the defense called Petitioner to testify, counsel noted that one of his convictions was for failing to register as a sex offender. She then asked, "how old were you when you became a sex offender?" *Id* at 19. Petitioner estimated that he was 14 years of age at the time, and stated that he was enrolled in middle school at the time. *Id*. Counsel did not pursue that matter further, and Petitioner flatly denied ever doing anything of a sexual nature to LF. He stated, "It never happened, I didn't do it. Never took place." *Id* at 20.

The jury convicted Petitioner on both counts, and the court merged Petitioner's convictions and imposed a 300-month sentence. Petitioner directly appealed his sentence asserting that it amounted to cruel and unusual punishment. Respondent's Exhibit 105. The Oregon Court of Appeals summarily affirmed the trial court's sentence, and the Oregon Supreme Court denied review. Respondent's Exhibits 115 & 116.

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County, but voluntarily dismissed that case without prejudice. Respondent's Exhibits 111-114. Thereafter, he initiated the current action which the Court subsequently stayed so Petitioner could proceed with a second PCR action in Umatilla County where he alleged, in part, that his trial attorney was ineffective with respect to her cross-examination of Detective Kelly and her handling of the admission of his prior judgments. The PCR court denied relief on all of Petitioner's claims. Respondent's Exhibit 129. The Oregon Court of Appeals affirmed that decision without issuing a written opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 133 & 134.

On August 13, 2019, this Court lifted the stay in this 28 U.S.C. § 2254 habeas corpus case and Petitioner, with the assistance of appointed counsel, filed an Amended Petition that raises two grounds for relief. Ground One consists of a claim of trial court error based upon the admission of Petitioner's prior judgments of conviction. Ground Two contains 11 sub-claims and faults the performance of trial counsel with respect to the admission of the prior conviction evidence, purported

deficiencies with the voir dire proceedings and within the Indictment, counsel's purported failure to properly investigate the case, and her failure to move for a judgment of acquittal. Respondent asks the Court to deny relief on the Petition because: (1) Petitioner argues only a portion of Ground Two, and he has not sustained his burden of proof with respect to his unargued claims; and (2) the PCR court's decision with respect to the argued claims was not objectively unreasonable.

**DISCUSSION**

I.   **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state court

identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Twenty-eight U.S.C. § 2254(d)(2) allows a petitioner to "challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). A federal habeas court cannot overturn a state court decision on factual grounds "unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a "'daunting standard—one that will be satisfied in relatively few cases,' especially because we must be 'particularly deferential to our state-court colleagues.'" *Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

## II. Unargued Claims

In this case, Petitioner argues that his trial attorney was constitutionally ineffective when, due to her ignorance of the

law, she allowed evidence of Petitioner's prior convictions to be admitted at trial and elicited damaging testimony from him.[2] Where Petitioner does not argue the merits of his remaining claims, he has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (Petitioner bears the burden of proving his claims). Even if Petitioner had briefed the merits of these claims, the Court does not find from its review of the record that the unargued claims would entitle Petitioner to relief.

### III. **Ineffective Assistance of Counsel**

Petitioner argues that counsel's handling of the prior conviction evidence was not competent such that he is entitled to a new trial. The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is

---

[2] Petitioner fails to identify in his briefing which of the claims from his Amended Petition he chooses to argue. Respondent believes that Petitioner argues Grounds Two(A-C), a characterization with which Petitioner does not disagree. This leaves Grounds One and Two(D-K) unargued.

whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

During Petitioner's PCR proceedings, trial counsel submitted a Declaration in which she explained her rationale surrounding the admission of the criminal history evidence:

> 2.   Petitioner alleges that I erroneously opened the door to evidence related to his prior criminal history because I asked the law enforcement officer about petitioner's denial that he committed the crimes for which he was charged.
>
> 3.   When I asked that series of questions to the officer, it was done in the heat of the moment. I was just hoping to slip it in.
>
> 4.   When the court gave us time over the weekend to brief the issue of whether or not petitioner's prior convictions should come in, I was prepared to do that and to present my argument on undue prejudice.
>
> 5.   However, petitioner decided that he did want to testify, after all. Petitioner was a challenging client. Prior to and during trial he had gone back and forth on whether he wanted to testify. Ultimately, after considering it for the weekend, he decided that he wanted to testify.
>
> 6.   In my discussions with petitioner, petitioner seemed to think the jury would not

hold his past against him, and that such a concern was not something to worry about.

7.   This was similar to his thinking that if, during the time frame of the charges, he lived for part of that time with a woman other than the child's mother, and that part of the time he was in custody, that that would prove he could not have had contact with the child. But there never was an alibi for the whole time frame where contact with the child was impossible, and that did not seem to concern him, either.

8.   It was evident to me from our conversations that petitioner was just certain that if he said he did not do it, he would be believed. It was like he thought the jury would find him so charming they would never doubt his word. He would get angry when I tried to disabuse him of such ideas.

9.   Whether or not petitioner testified was always up to the petitioner, and I informed petitioner of his control over this choice. I always tell my clients that if they testify, their criminal history, as to felonies and some misdemeanors, will come in. I tell them that the purpose of the criminal history coming in is to challenge their credibility, so if they testify, they can explain the circumstances if they want to, so the jury might not think it is so bad.

10.  I also tell my clients, including petitioner, that juries often want to hear from the defendant that they did not do the thing they are accused of.

11.  Because petitioner elected to testify, I presented no argument that his prior impeachable convictions should not come in. There was no reason to do so.

12.  We had already agreed with the state to stipulate to jail records showing that petitioner was in custody at certain times. This was part of the alibi defense that we presented. The jury was going to know,

pursuant to that defense, that petitioner had
prior convictions.

13. Petitioner insisted on using these jail
records. He knew that doing so would mean
that the jury would know that he had a
criminal record. I told him that those times
in custody would not explain his whereabouts
on other times, and that the jury could think
he had access to the child when he was out of
custody. He still insisted on presenting to
the jury this evidence of his time in jail.

Respondent's Exhibit 127, pp. 1-3.

The PCR court found counsel's Declaration to be credible. It
concluded that given Petitioner's intent to testify, "there was
no good reason for trial counsel to continue her objections to
the prior convictions coming in" and that counsel "acted
reasonably in withdrawing her objection to the impeachment
evidence." Respondent's Exhibit 129 p. 3. With respect to
counsel's questions to Detective Kelly that potentially opened
the door to the admission of Petitioner's criminal history, the
PCR court found:

Although it appears that trial counsel was
not familiar with *State v. Dishman,*
Petitioner has not proven that a reasonable
attorney familiar with *Dishman*, would not
have asked the same questions. The state had
offered its case including the testimony of
LF. If Petitioner had not testified, as
originally indicated, there would have been
no evidence before the jury that Petitioner
was denying the events unless it was
solicited from Detective Kelly. The trial
judge did not rule that the questions opened
the door to the introduction of Petitioner's
criminal history and reserved ruling until
the parties could brief the issue over the
weekend. The issue became moot when
Petitioner chose to testify.

> Petitioner has also failed to prove
> prejudice. Because Petitioner chose to
> testify, the issue of the admission of
> Petitioner's prior criminal history became
> moot. They were admissible when Petitioner
> testified. There is no evidence that the
> potential introduction of the criminal
> history had any impact o[n] Petitioner's
> decision to testify.

*Id* at 3-4.

Petitioner asserts that this decision not only contained an unreasonable determination of the facts, but was contrary to, and an unreasonable application of, clearly established Supreme Court precedent. He contends that the PCR court "contrived" a strategic reason for counsel's questions by envisioning a scenario where an attorney familiar with *Dishman* might have asked Detective Kelly the same questions, and that it overlooked the fact that his decision to testify was not knowing and voluntary because counsel had already opened the door to the admission of his criminal history. He maintains that counsel was ignorant of the *Dishman* precedent that was 15 years old at the time of trial, and proceeded to cover her tracks by having her client testify despite twice previously advising the trial court that the defense would be presenting no witnesses.[3]

Counsel's performance was lacking where she failed to understand that eliciting hearsay statements of her client's innocence potentially had the effect of opening the door to his

---

[3] Petitioner also argues that counsel was ineffective for inquiring at what age Petitioner became a sex offender, but he did not fairly present such a claim during his PCR proceedings, leaving it procedurally defaulted. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982); *see also* Respondent's Exhibits 118, 130, 132. Petitioner's assertion that such a claim is somehow subsumed within the claims he did argue is not persuasive because he did not give Oregon's state courts a fair opportunity to address this claim.

criminal history. The PCR court did not find to the contrary, and instead concluded that Petitioner was not entitled to relief for two reasons: (1) a reasonable attorney familiar with *Dishman* might ask the same questions; and (2) Petitioner's decision to testify was a voluntary one, and mooted the evidentiary issue.

Even assuming (without deciding) that the PCR court was wrong in its determination that an attorney familiar with *Dishman* might ask the same questions of Detective Kelly, the record reveals that Petitioner testified voluntarily and without regard to a potentially adverse evidentiary ruling. Petitioner's primary contention is that he could not have made his decision to testify knowingly and voluntarily where his attorney had potentially opened the door to the admission of his criminal history through her own error, and where the trial court had not yet issued a ruling on the admissibility of his criminal history.[4] The record in this case, however, does not support his argument and, instead, establishes that Petitioner elected to testify voluntarily.

Counsel's Declaration revealed that Petitioner had "gone back and forth" both before and during trial about whether to testify, ultimately concluded that the jury would find him

---

[4] The trial judge appeared skeptical that the prior conviction evidence would be admissible because the statements elicited from Detective Kelly did not appear to tell the jury anything it did not already know, while an evidentiary ruling in the State's favor would allow the admission of evidence that was "so prejudicial" to the defense. Respondent's Exhibit 102, p. 136. Despite the judge's clear reservations about the admissibility of the evidence, Petitioner nevertheless elected to testify. These actions are consistent with counsel's Declaration that Petitioner did not believe the jury would hold his prior convictions against him, especially in light of what he believed would be his own compelling testimony.

credible despite his criminal history if he testified, and became angry with counsel when she tried to disabuse him of what she perceived to be overly optimistic thinking. Respondent's Exhibit 127. Not only did the PCR court find this Declaration to be credible, but Petitioner presented no countervailing evidence on this point leading the PCR court to find that "[t]here is no evidence that the potential introduction of the criminal history had any impact o[n] Petitioner's decision to testify." Respondent's Exhibit 129, p. 4. These were not unreasonable findings, and the fact that counsel had advised the trial court prior to the weekend recess that the defense would not be presenting any witnesses is insufficient to overcome the findings. Taking the findings as true, Petitioner fails to establish that he suffered prejudice where he voluntarily decided to testify in his own defense, thereby opening the door to his criminal history for impeachment purposes. For all of these reasons, Petitioner is not entitled to habeas corpus relief.

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#14) is denied. The Court does, however, issue a Certificate of Appealability on the Ground Two(A-C) ineffective assistance of counsel claims he argues in his briefing.

IT IS SO ORDERED.

DATED this _____ day of June, 2020.

_____
Marco A. Hernandez
United States District Judge

16 – OPINION AND ORDER